## SPAR MOUNTAIN MINING CO. v. SCHWERIN.

(Circuit Court of Appeals, Seventh Circuit. February 15, 1924.)

No. 3330.

**Master and servant ⬅➤70(2)—Commission contract with minimum guaranty construed.**

Under contract between mining company and its manager, whereby he was to be paid certain commissions on ores mined and sold and a minimum of $10,000 per annum, the commissions to be determined on the 30th of June, 1921, and on the 31st of December, 1921, *held*, that commissions on ore produced in either of the two periods must be accredited when the ore is sold, to the period wherein it was produced, and that the manager is entitled to the commissions so accredited to that period, less what was paid him on his minimum guaranty for such period only.

In Error to the District Court of the United States for the Eastern District of Illinois.

Action by Martin Schwerin against the Spar Mountain Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Defendant company made a written contract with plaintiff, an experienced mining engineer, to act as general manager of its fluor spar mine, plaintiff's duties being the technical management of the mining operations and equipment of the property for the production of fluor spar, in such quantities as the company should deem advisable. The contract period was 18 months from July 1, 1920. It was provided that for his compensation plaintiff should be paid "on all ores mined and sold a commission of [a sliding scale of from 50 cents to $2.20 per ton] when the price f. o. b. cars Shawneetown is [a corresponding sliding scale of from $12 to $44 per ton]." Sections 4 and 5 of the contract are:

"4. The employer agrees to pay to the agent on account of such commission, whether earned or not, a minimum of ten thousand ($10,000) dollars per annum, payable in equal monthly installments at the end of each month. The amount of the commissions due and any balance to be paid to the agent in excess of the said minimum guaranty shall be determined on the 30th of June, 1921, and on the 31st of December, 1921, and shall be paid within thirty-one days after each of those dates. Should the commissions earned be less than the guaranty, the difference is not to be debited against the agent.

"5. As and when this agreement terminates, by expiration, on December 31, 1921, or at the end of any renewal term, the agent shall be entitled to his balance of commissions, if any, in excess of said minimum guaranty, on any ores mined and hauled to the mill, of suitable quality for milling, but not then sold. Such commissions to be paid as and when the said ore is sold."

Plaintiff was regularly paid his monthly installment of the $10,000, minimum guaranty. There was mined and delivered to the mill during the first year of the contract ore of suitable quality for milling aggregating 17,027 tons,

of which 11,882 tons were sold during such first-year period, the portion then remaining unsold being about 5,000 tons, all of which was sold after July 1, 1921, most of it after December 31, when the contract terminated. At the end of the first-year period defendant paid plaintiff over and above the guaranteed $10,000 the sum of $1,612.99, which payment was on the same tonnage inadvertently short by $93.73 of the amount of the commissions at the agreed rate, and which the company admits to be due plaintiff.

Some time before the end of the first year the production of ore ceased through lack of demand for the product, and was not resumed until after the contract expired; but development work on the property continued under plaintiff's management until the end of the contract period, plaintiff being paid in monthly installments $5,000 for the last six-months period. The District Court held that the 5,000 tons of ore produced during the first year of the contract, but sold at different times during the next period, or after the contract expired, were referable to the first year of the contract, and that the commissions thereon at contract rate should be added to the commissions for that year, regardless of when the sales took place, and judgment was given accordingly.

David A. Warford and James A. Watson, both of Elizabethtown, Ill., for plaintiff in error.

Rudolph J. Kramer, of East St. Louis, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The one question presented is that of the construction of the contract; the company contending that under the fifth section of the contract commissions in excess of the guaranteed minimum would be payable only after the total commissions exceeded the total minimum for the whole period, in which case nothing would be due plaintiff.

By the terms of the contract plaintiff had to do only with the technical side of the business. He had nothing whatever to do with sales, which were left entirely in control of the company. He superintended development of the mines and production of the ore; the amount of production being determined by the company. If it directed that there be no production, plaintiff would continue to receive his guaranteed monthly minimum compensation. If the entire production had been sold during the year, it is evident that the contractual commission thereon, over and above the $10,000 minimum paid, would have been paid over to plaintiff. This is evident because, even if there were doubt under the contract as to whether the entire contract period applied in figuring the excess, the parties by their conduct indicated their view of the construction to be given; for, notwithstanding production had ceased before the end of the first year, and it was uncertain when it would be resumed, and there was the possibility that, if the later period were taken into consideration in fixing the minimum, a sum smaller by $5,000 might be due for surplus commissions than if only the $10.000 minimum were deductible from the commissions, nevertheless the company paid plaintiff at the end of the first year the excess of over $1,600 above the then minimum of $10,000, and admits and offers to pay a still further sum inadvertently omitted from that calculation.

It is our view of the contract that plaintiff's right to commission was fixed when the ore was produced as required by the contract, subject to sale of the ore for the purpose of determining the amount of the

commission whenever after production the sale occurred. If this were not so, the sales being entirely within the control of the company, it might so manipulate them as materially to affect the plaintiff in his rights. Near the end of the first year it might have had opportunity to sell these 5,000 tons to advantage, and if it retained them until the beginning of the second contract period the plaintiff would have had no advantage of production in the first period, but would have been compelled to take his chances upon production during the second period being sufficiently large to afford him a surplus of commissions over and above the stipulated minimum for the entire contract period. Unless such a construction of the contract is imperative, such intention should not be imputed to the parties.

We do not look upon section 5 as being out of harmony with this construction. It seems to have been inserted out of an abundance of caution to forestall any claim that when the contract ultimately expired plaintiff's right to commission would end as to ores then unsold; and the reference in the section to "excess of *said* minimum guaranty" refers to the minimum of $10,000 per annum as provided in the fourth section, which fixed the two settlement periods. Neither section conflicts with that which specifies his rate of commission as dependent on "when the sale price f. o. b. cars Shawneetown is" as by the there stated figures fixed.

We are of opinion that the true intent and proper construction of this contract is that commissions on the ore produced in either of the two periods fixed by section 4, as and when the ore is sold, must be accredited to the period wherein it was produced, and that plaintiff is entitled to receive the commissions so accredited to that period, less what was paid him on his minimum guarantee for such period only.

This was the construction adopted by the District Court, and its judgment is accordingly affirmed.